**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ANDREW HALCARZ, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>COGNIZANT TECHNOLOGY SOLUTIONS CORPORATION and TRIZETTO PROVIDER SOLUTIONS, LLC,<br><br>Defendants. | **Case No.**<br><br>**CLASS ACTION COMPLAINT**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Andrew Halcarz ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint ("Complaint") against Defendant Cognizant Technology Solutions Corporation ("Cognizant") and Defendant TriZetto Provider Solutions, LLC ("TriZetto") (collectively referred to as "Defendants") and alleges, upon personal knowledge as to his own actions and upon information and belief, including his counsels' investigations, as to all other matters, as follows:

## I. NATURE AND SUMMARY OF THE ACTION

1. This action stems from Defendants' failure to secure its software programs which led to the unnecessary breach of sensitive personal information of millions of individuals, including Plaintiff.

2. Plaintiff brings this class action against Defendants for their failure to properly secure and safeguard sensitive personally identifiable information ("PII") and protected health

information ("PHI") provided by and belonging to, the patients and policyholders of Defendants' clients.

3. Cognizant is a professional services and consulting firm and recorded revenue of over $21 billion in 2025. Trizetto provides revenue management services to the healthcare industry. Cognizant acquired TriZetto in 2014 for $2.7 billion. As part of Cognizant and TriZetto's regular business activities, Defendants collect, maintain and store the Private Information of the patients and policyholders of their clients.

4. It was reported that on October 2, 2025, TriZetto discovered suspicious activity in its systems and determined that there had been unauthorized access of its network and exfiltration of sensitive information by cybercriminals (the "Data Breach").[1]

5. Plaintiff brings this action on behalf of all persons whose Private Information was compromised as a result of Defendants' failure to: (i) adequately protect the Private Information of Plaintiff and Class members; and (ii) warn Plaintiff and Class members of their inadequate information security practices. Defendants' conduct amounts to at least negligence and violates federal statutes designed to prevent or mitigate this very harm.

6. Plaintiff and Class Members have suffered actual, present and foreseeable injuries as a direct result of the Data Breach, including: (a) theft of their Private Information; (b) costs associated with the detection and prevention of identity theft for their respective lifetimes; (c) costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the consequences of the Data Breach; (d) invasion of privacy; (e) the present and/or imminent injury arising from actual and/or potential fraud and identity theft

[1] *Cognizant's TriZetto Provider Solutions Data Breach Impacted Over 3.4 Million Patients*, Security Affairs, *available at*: https://securityaffairs.com/189149/data-breach/cognizants-trizetto-provider-solutions-data-breach-impacted-over-3-4-million-patients.html (last visited April 6, 2026).

posed by their personal data being placed in the hands of the ill-intentioned hackers and/or criminals; (f) damages to and diminution in value of their personal data entrusted to Defendants on the mutual understanding that Defendants would safeguard their Private Information against theft and not allow access to and misuse of their personal data by others; and (g) the continued risk to their Private Information, which remains in the possession of Defendants, and which is subject to further injurious breaches, so long as Defendants fails to undertake appropriate and adequate measures to protect Plaintiff and Class Members' Private Information. Plaintiff and Class Members, at the very least, are entitled to damages and injunctive relief tailored to address the vulnerabilities exploited in the breach, and designed to protect Plaintiff and Class Members' Private Information, as well as an order directing the destruction and deletion of all Private Information for which Defendants cannot demonstrate a reasonable and legitimate purpose for continuing to maintain possession of such Private Information.

7. Defendants understand the need to protect the privacy of their clients and their customers and use security measures to protect its customers' information from unauthorized disclosure. And as a sophisticated financial entity that maintains private and sensitive consumer information, Defendants and their corporate affiliates further understood the importance of safeguarding Private Information.

8. Defendants disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, or negligently failing to take and implement adequate and reasonable measures to ensure that Plaintiff and Class members' Private Information was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required and appropriate protocols, policies and procedures regarding the encryption of data, even for internal use.

9. Furthermore, Defendants should have been vigilant in protecting Private Information as Cognizant itself warned of future cybersecurity incidents arising from the exact vulnerability that it experienced in the Data Breach.

10. In the wake of a 2024 data breach at Change Healthcare, a healthcare technology company that provides services similar to those of Defendants, Defendants attempted to capitalize on their competitor's cyber-attack to advertise how their systems were superior to those of Change Healthcare. Specifically, Cognizant published a blogpost which stated "while it's unknown exactly how Blackcat first accessed Change Healthcare's network, access control is a major issue in healthcare, where so many parties require access to one another's data." . . . "There's so much third-party interaction going on," . . . "The first thing we tell clients is that you need to know who has access to your apps."[2]

11. It has been reported that the Data Breach was due to an "unauthorized actor accessing records linked to insurance eligibility verification transactions."[3]

12. As a result of Defendants' actions, the Private Information of Plaintiff and Class Members was compromised through access to and exfiltration by an unknown and unauthorized third party. Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe, and they are entitled to injunctive and other equitable relief.

13. Plaintiff by this action seeks compensatory damages together with injunctive relief to remediate Defendants' failures to secure their and the other Class Members' Private Information, and to provide damages, among other things, for Plaintiff and Class Members to

---

[2] *The Data Breach That Woke Up The Healthcare Industry*, Cognizant, *available at*: https://www.cognizant.com/us/en/insights/insights-blog/the-data-breach-that-woke-up-the-healthcare-industry-wf2527300 (last visited April 1, 2026).
[3] *Supra*, see note 1.

secure identity theft insurance, and credit repair services for Class Members' respective lifetimes to protect the Class of Data Breach victims from identity theft and fraud.

## II. JURISDICTION AND VENUE

14. This Court has subject matter and diversity jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action wherein the amount of controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one Class Member is a citizen of a state different from Defendant to establish minimal diversity.

15. Venue is proper under 18 U.S.C § 1391(b)(1) in this Judicial District as substantial acts and part of the events or omissions giving rise to the claims as alleged in this Class Action Complaint occurred in this District.

16. The District of New Jersey has personal jurisdiction over Defendants because Cognizant is headquartered in the State of New Jersey and both Defendants regularly conduct business in the State of New Jersey.

## III. PARTIES

17. Plaintiff Andrew Halcarz is a citizen of Illinois, residing in Chicago.

18. Plaintiff Halcarz learned of the Data Breach after receiving a notice of the Data Breach, dated March 17, 2026, informing him that him that his Private Information, including his name, address, date of birth, health insurance member number, provider name, health insurer name, primary insured information, and other demographic, health, and health insurance information was impacted by the Data Breach.

19. The data breach notice received by Plaintiff Halcarz also stated that "[o]n or around November 28, 2025, Defendants learned that the data impacted by the Data Breach may have

included Plaintiff Halcarz' Private Information. Despite this, Defendants waited until March 17, 2026, to inform him of the Data Breach.

20. Plaintiff Halcarz very careful with his Private Information and routinely checks his credit reports to protect against fraud.

21. Plaintiff Halcarz would not have entrusted his Private Information to Defendants or otherwise would have permitted his Private Information be provided to Defendants, had he known that Defendants' data security practices were inadequate and susceptible to unauthorized data disclosures and privacy violations.

22. Upon information and belief, Defendant Cognizant is a Delaware corporation and maintains a principal place of business at 300 Frank W Burr Blvd, Suite 600, Teaneck, New Jersey 07666.

23. Upon information and belief, Defendant TriZetto, is a limited liability corporation with its principal place of business at 330 Rider Trail S., Earth City, Missouri 63045.

## IV. FACTUAL ALLEGATIONS

24. Cognizant is a professional services and consulting firm and recorded revenue of over $21 billion in 2025. Cognizant acquired TriZetto in 2014 for $2.7 billion.

25. TriZetto, a wholly-owned subsidiary of Cognizant, provides revenue management and claims clearinghouse services to physicians, hospitals, and health systems.

26. As part of Cognizant and TriZetto's regular business activities, Defendants collects, maintains and stores the Private Information of their clients' patients and policyholders.

27. Defendants implicitly and/or explicitly represented to Plaintiff and Class Members, that their Private Information would be secured.[4]

[4] *Privacy Policy*, Cognizant, available at: https://www.cognizant.com/us/en/privacy-notice? (last visited April 6, 2026).

28. Specifically, Cognizant states on its website that "Cognizant Technology Solutions Corporation and its affiliated companies [ ] are firmly committed to protecting your privacy" and "Cognizant implements appropriate security measures designed to prevent unlawful or unauthorized processing of personal information and accidental loss of or damage to personal information."

29. Defendants had duties and obligations through common law, federal regulations, contracts, industry standards, and their representations to Plaintiff and Class Members that Defendants would adopt reasonable measures to protect the Private Information of Plaintiff and Class Members from third party actors.

30. Despite possessing such duties and obligations, Defendants' systems contained vulnerabilities which were exploited by cybercriminals. Had Defendants properly secured their platform, and/or had they properly implemented security measures, Plaintiff's and Class Member's Private Information would not have been at risk as a result of Defendants' deficient security measures.

31. It was reported that, on October 2, 2025, Defendants detected that cybercriminals had repeatedly accessed its network starting in November 2024 and had stolen sensitive Private Information. As admitted by Defendants, the Data Breach had been ongoing for almost a year before it was detected.

32. Defendants took several weeks to identify what Private Information had been breached, and it was only on November 28, 2025 that Defendants revealed that the Data Breach had occurred and that it had involved personal and health data, including names, addresses, birth dates, Social Security numbers, insurance details, and provider information.

***The Value of Personally Identifiable Information (PII) and Protected Health Information (PHI)***

33. PII is very valuable to criminals, as evidenced by the prices they will pay for it on the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information is sold at prices ranging from $40 to $200, and bank details have a price range of $50 to $200.[5]

34. Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[6]

35. Social Security numbers are among the most sensitive kind of personal information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[7]

36. What is more, it is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against potential misuse of

---

[5] George, A. (2019, Oct. 16). *Your Personal Data Is for Sale on the Dark Web. Here's How Much It Costs,* Digital Trends, *available at*: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last visited April 6, 2026).

[6] Luthi, B. (2017, Dec. 6). *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, *available at*: https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last visited April 6, 2026).

[7] Social Security Administration, *Identity Theft and Your Social Security Number*, *available at*: https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited April 6, 2026).

a Social Security number is not permitted; an individual instead must show evidence of actual, ongoing fraud to obtain a new number.

37. Even then, a new Social Security number may not be effective. According to the Identity Theft Resource Center, "The credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[8]

38. Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, in that situation, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change—name, birthdate, financial history, and Social Security number.

39. This data commands a much higher price on the black market. "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[9]

40. Identity thieves may obtain driver's licenses, government benefits, medical services, and housing, or even give false information to police, among other forms of fraud.

41. The Private Information of Plaintiff and Class Members was taken by hackers to engage in identity theft and/or to sell it to other criminals who purchase the Private Information for that purpose. The fraudulent activity resulting from the Data Breach may not come to light for years.

42. Further, there may be a time lag between when harm occurs and when it is discovered and between when Private Information is stolen and when it is used. According to the

---

[8] Naylor, B. (Feb. 9, 2015). *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR *available at*: http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millionsworrying-about-identity-theft (last visited April 6, 2026).
[9] Greene, T. (Feb. 6, 2015). *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, *available at*: https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last visited April 6, 2026).

U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[10]

43. Plaintiff and Class Members now face a lifetime of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damage in addition to any fraudulent use of their Private Information.

***Defendants Failed To Comply With HIPAA***

44. Defendants are governed by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and its relevant regulatory rules. See 45 C.F.R. § 160.102.

45. Defendants, as 'health-tech' organizations, provide data services related to healthcare services and is classified as a Health Care Clearinghouse, and defined by HIPAA as a "Covered Entity." See 45 C.F.R. § 160.103.

46. In the alternative, Defendants, if not considered to be a Health Care Clearinghouse, are defined under HIPAA to be considered as a "Business Associate." *Id*.

47. Both Covered Entities and Business Associates are governed by HIPAA rules, and are required to protect against reasonably anticipated threats to the security of sensitive patient health information.

48. These rules include, but are not limited to, the HIPAA Privacy Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health

---

[10] *Report to Congressional Requesters*, GAO, at 29 (June 2007), *available at:* http://www.gao.gov/new.items/d07737.pdf (last visited April 6, 2026).

Information"), and the HIPAA Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and C ("Security Standards for the Protection of Electronic Protected Health Information").

49. HIPAA rules establish national standards to protect patient's health information, as defined by the Act as "individually identifiable health information" which either "identifies the individual" or where there is a "reasonable basis to believe the information can be used to identify the individual," that is held or transmitted by a healthcare provider. *See* 45 C.F.R. § 160.103.

50. HIPAA requires Covered Entities and Business Associates to also implement safeguards to ensure the confidentiality, integrity, and availability of PHI. Safeguards must include physical, technical, and administrative components. *See* C.F.R. Part 160 and Part 164, Subparts A and C.

51. Additionally, HIPAA also requires Covered entities and Business Associates to provide notification following a breach of unsecured protected health information by way of the HIPAA Breach Notification Rule. *See* 45 CFR §164.400-414.

52. Pursuant to the Breach Notification Rule, Defendant was required to provide affected individuals with notice of the breach, without unreasonable delay and in no case later than sixty days following the discovery of the breach. *Id*.

53. Additionally, Defendant was required to provide a brief description of the breach, the types of information involved in the breach, the steps affected individuals should take to protect themselves from potential harm, a brief description of what Defendant was doing to investigate the breach, mitigate the harm, and prevent further breaches. *Id*.

54. Plaintiff Halcarz was not informed of the Data Breach until March 17, 2026, several months after Defendants discovered the Data Breach, in clear violation of this rule.

55. Defendants failed to maintain the privacy and security of the PHI that they were responsible for, and failed to inform affected individuals that their Private Information had been stolen. Upon information and belief, Defendants violated HIPAA by failing to:

a. Maintain an adequate data security system;

b. Adequately protect Plaintiff's and the Class Members' Private Information;

c. Ensure the confidentiality and integrity of electronic PHI created, received, maintained, or transmitted, in violation of 45 C.F.R. § 164.306(a)(1);

d. Implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that had been granted access rights, in violation of 45 C.F.R. § 164.312(a)(1);

e. Implement adequate policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 C.F.R. § 164.308(a)(1)(i);

f. Implement adequate procedures to review records of information system activity regularly, such as audit logs, access reports, and security incident tracking reports, in violation of 45 C.F.R. § 164.308(a)(1)(ii)(D);

g. Protect against reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding PHI, in violation of 45 C.F.R. § 164.306(a)(3);

h. Train its employees and agents effectively on the policies and procedures with respect to protected health information as necessary and appropriate for the members of their workforces to carry out their functions and to maintain security of PHI, in violation of 45 C.F.R. § 164.530(b);

i. Failing to timely and adequately notify affected individuals of the Data Breach;

j. Failing to render the electronic PHI they maintained unusable, unreadable, or indecipherable to unauthorized individuals, by failing to encrypt the electronic PHI as specified in the HIPAA Security Rule by "the use of an algorithmic process to transform data into a form in which there is a low probability of assigning meaning without use of a confidential process or key" in violation of 45 CFR § 164.304.

56. The Data Breach resulted from a combination of insufficiencies that demonstrate how Defendants failed to comply with safeguards mandated by HIPAA regulations.

***Defendant Failed To Comply With FTC Guidelines***

57. The Federal Trade Commission ("FTC") issued several business guidelines emphasizing the critical importance of incorporating reasonable data security practices into all business operations. These guidelines were designed to help businesses understand and fulfill their responsibility to protect customer data.

58. In 2016, the FTC set forth cybersecurity guidelines for businesses, and published "Protecting Personal Information: A Guide for Business.[11]" These guidelines outline essential practices such as (a) protect the personal customer information that they collect and store; (b) properly dispose of personal information that is no longer needed; (c) encrypt information stored on their computer networks; (d) understand their network's vulnerabilities; and (e) implement policies to correct security problems. The FTC guidelines further recommend that businesses use an intrusion detection system, monitor all incoming traffic for unusual activity, monitor for large amounts of data being transmitted from their system, and have a response plan ready in the event of a breach.

59. The FTC's guidelines also advise businesses, including healthcare businesses, to not retain PII and PHI longer than necessary, to restrict access to sensitive data, enforce the use of complex passwords, adopt industry-tested security methods, monitor networks for suspicious activity, and ensure that third- party service providers implement adequate security measures. *Id*.

60. The FTC has taken enforcement actions against businesses, including healthcare providers and their associates, for failing to protect customer data adequately. These actions are treated as unfair acts or practices under Section 5 of the Federal Trade Commission Act ("FTCA"). *See* 15 U.S.C. § 45.

[11] *Start With Security: A Guide For Businesses*, FTC, available at: https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last visited April 6, 2026).

61. Defendants were required to implement fundamental data security practices in line with FTC guidelines. Its failure to do so, particularly in safeguarding against unauthorized access to patients' PII and PHI, is considered an unfair practice under the Section 5 of the FTC Act.

62. Defendants were fully aware of their obligations to protect sensitive patient data and the severe consequences of failing to meet these obligations. Despite this knowledge, Defendants did not take the necessary steps to comply with the FTC guidelines, leaving patient data vulnerable and exposed.

63. Defendants' failure to implement basic security measures, is not only a failure to comply with FTC guidelines, but also unnecessarily risked the privacy and security of its client's data.

64. Additionally, the FTC requires businesses that maintain medical information to provide timely notice to affected individuals of a data breach by way of the Health Breach Notification Rule. 16 C.F.R. 318.

*65.* This rule applies to vendors of personal health records and their third party service providers, pursuant to the HITECH Act. *Id*.

66. Pursuant to the Breach Notification Rule, Defendants were required to notify affected individuals, media, and the FTC of the breach, without unreasonable delay and in no case later than sixty days following the discovery of the breach. *Id*.

67. Additionally, Defendants were required to provide a brief description of the breach, the types of information involved in the breach, the steps affected individuals should take to protect themselves from potential harm, a brief description of what Defendants were doing to investigate the breach, mitigate the harm, and prevent further breaches. *Id*.

68. Defendants' untimely notification of the Data Breach, approximately five months after the Data Breach was discovered, is in clear violation of this rule.

***Defendants Failed To Comply With Industry Standards***

69. Cybersecurity experts consistently recognize healthcare providers as particularly vulnerable to cyberattacks, primarily due to the valuable nature of the Private Information they handle.

70. Certain identified best practices should minimally be implemented by healthcare providers like the Defendants. These practices include but are not limited to, educating all employees, enforcing strong passwords, applying multi-layer security measures (including firewalls, anti-virus, and anti-malware software), implementing encryption to render data unreadable without proper authorization, utilizing multi-factor authentication, regularly backing up data, and restricting employee access to sensitive data.

71. Additional standard cybersecurity best practices within the healthcare industry encompass installing appropriate malware detection software, monitoring and limiting network ports, securing web browsers and email systems, configuring network infrastructure (like firewalls, switches, and routers), safeguarding physical security systems, and training staff on key cybersecurity aspects.

72. On information and belief, Defendants failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS Controls), which are all established standards in reasonable cybersecurity readiness.

73. Given these frameworks represent the current and applicable industry standards, Defendants' failure to comply with at least one or all of these accepted standards significantly contributed to the occurrence of the Data Breach. Their non-compliance created vulnerabilities that the threat actor exploited, leading to the compromise of sensitive patient data.

***Large Companies are Regularly Targeted by Cybercriminals***

74. Defendants were or should have been, fully aware of the unique type and the significant volume of data on their network, comprising millions of individuals' detailed and confidential personal information and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

75. Data thieves regularly target companies like Defendants due to the large volumes of Private Information that they come into possession of.

76. As custodians of Plaintiff and Class Member's Private Information, Defendants knew or should have known the importance of protecting its Private Information, and of the foreseeable consequences if any data breaches occurred.

77. Defendants' security obligations were especially important due to the substantial up-tick of cyber-attacks and data breaches occurring in recent years.

78. Furthermore, Defendant should have been vigilant in protecting its data as companies such as Defendants are especially targeted for cyber-attacks – especially as Defendants warned of Data Breaches in the healthcare industry.

79. In the wake of the massive Change Healthcare Data Breach, Cognizant attempted to capitalize on its competitor's weakness to advertise how its systems were superior to Change Heathcare's. Specifically, Cognizant published a blogpost which stated "while it's unknown exactly how Blackcat first accessed Change Healthcare's network, access control is a major issue in healthcare, where so many parties require access to one another's data. "There's so much third-party interaction going on," . . . "The first thing we tell clients is that you need to know who has access to your apps."[12]

80. It has been reported that the Data Breach in controversy here was due to an "unauthorized actor accessing records linked to insurance eligibility verification transactions."[13]

---

[12] *Supra*, see note 2.
[13] *Supra*, see note 1.

***Common Injuries and Damages to Plaintiff and Class Members***

81. Although it is believed that Defendants have offered identity monitoring services for a limited time, the offered services are inadequate to protect Plaintiff and Class Members from the threats they face for years to come, particularly in light of the highly sensitive nature of the Private Information at issue here.

82. The injuries to Plaintiff and Class Members were directly and proximately caused by Defendants' failure to implement or maintain adequate data security measures to protect the Private Information of their current and former customers.

83. As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members are presently experiencing and will continue experiencing actual harm from fraud and identity theft.

84. Plaintiff and Class Members are presently experiencing substantial risk of out-of-pocket fraud losses, such as loans opened in their names, tax return fraud, utility bills opened in their names, and other identity theft.

85. Plaintiff and Class Members face substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes based on their Private Information as potential fraudsters could use that information to target such schemes more effectively to Plaintiff and Class Members.

86. Plaintiff and Class Members are also incurring and may continue incurring out-of-pocket costs for protective measures such as credit monitoring fees (for any credit monitoring obtained in addition to or in lieu of the inadequate monitoring offered by Defendants), credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

87. Plaintiff and Class Members also suffered a loss of value of their Private Information when it was acquired by the cyber thieves in the Data Breach. Numerous courts have recognized the propriety of loss of value damages in related cases.

88. Plaintiff and Class Members have suffered actual injury as a direct result of the Data Breach. Many victims suffered ascertainable losses in the form of out-of-pocket expenses

and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach relating to:

a. Finding fraudulent loans, insurance claims, tax returns, and/or government benefit claims;

b. Purchasing credit monitoring and identity theft prevention;

c. Placing ‘freezes’ and ‘alerts’ with credit reporting agencies;

d. Spending time with financial institution or government agencies to dispute fraudulent charges and/or claims;

e. Contacting financial institutions and closing or modifying financial accounts; and

f. Closely reviewing and monitoring Social Security number, bank accounts, payment card statements, and credit reports for unauthorized activity for years to come.

89. Moreover, Plaintiff and Class Members have an interest in ensuring that their Private Information, which is believed to remain in the possession of Defendants, is protected from further breaches by the implementation of security measures and safeguards, including but not limited to, making sure that the storage of data or documents containing sensitive and confidential personal, and/or financial information is not accessible online, that access to such data is password-protected, and that such data is properly encrypted.

90. Further, as a result of Defendants’ conduct, Plaintiff and Class Members are forced to live with the anxiety that their Private Information may be disclosed to the entire world, thereby subjecting them to embarrassment and depriving them of any right to privacy whatsoever.

91. As a direct and proximate result of Defendants’ actions and inactions, Plaintiff and Class Members have suffered a loss of privacy and are at a substantial and present risk of harm.

## IV. CLASS ACTION ALLEGATIONS

92. Plaintiff brings this action as a class action pursuant to Rule 23 *et seq.* of the Federal Rules of Civil Procedure on behalf of the Class.

93. Plaintiff proposes the following Class Definition:

> **All individuals residing in the United States whose Private Information was compromised in the Data Breach.**

94. Excluded from the Class are the following individuals and/or entities: Defendants and Defendants' parents, subsidiaries, members, affiliates, officers and directors, and any entity in which a Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members and staff.

95. Plaintiff reserves the right to modify or amend the definitions of the proposed Class before the Court determines whether certification is appropriate.

96. The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

97. Questions of law and fact common to the Class exist and predominate over any questions affecting only individual Class Members. These questions include but are not limited to:

a. Whether Defendants failed to adequately safeguard the Private Information of Plaintiff and Class Members;

b. Whether and to what extent Defendants had a duty to protect the Private Information of Plaintiff and Class Members;

c. Whether Defendants had a duty not to use the Private Information of Plaintiff and Class Members for non-business purposes;

d. Whether Defendants adequately, promptly, and accurately informed Plaintiff and Class Members that their Private Information had been compromised;

e. Whether Defendants failed to implement and maintain reasonable security procedures and practices adequate to protect the information compromised in the Data Breach, considering its nature and scope;

f. Whether Defendants adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

g. Whether Defendants violated any statutes as alleged herein;

h. Whether Defendants engaged in unfair, unlawful, or deceptive practices, including by failing to safeguard the Private Information of Plaintiff and Class Members;

i. Whether Plaintiff and Class Members are entitled to damages as a result of Defendants' wrongful conduct;

j. Whether Plaintiff and Class Members are entitled to restitution as a result of Defendants' wrongful conduct; and

k. Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

98. Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

99. Consistent with Fed. R. Civ. P. 23(a)(4), Plaintiff will fairly and adequately represent and protect the interests of the Class Members. No Plaintiff has a disabling conflict of interest with any other Member of the Class. Plaintiff seeks no relief that is antagonistic or adverse to the Members of the Class, and the infringement of rights and the damages they have suffered are typical of other Class Members. Plaintiff also has retained counsel experienced in complex class action litigation, and they intend to prosecute this action vigorously.

100. As provided under Fed. R. Civ. P. 23(b)(2), Defendant has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct in relation to the Class and making final injunctive and corresponding declaratory relief appropriate with respect to the Class as a whole. Defendants' policies challenged herein apply to and affect Class Members uniformly, and Plaintiff challenges these policies by reference to Defendants' conduct with respect to the Class as a whole.

101. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

102. Consistent with Fed. R. Civ. P. 23(b)(3), class treatment is superior to all other available methods for the fair and efficient adjudication of this controversy. Among other things, it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Moreover, class action treatment will permit the adjudication of relatively modest claims by Class Members who could not individually afford to litigate a complex claim against large corporations such as Defendants. Prosecuting the claims pleaded herein as a class action will eliminate the possibility of repetitive litigation. There will be no material difficulty in the management of this action as a class action.

103. Particular issues, such as questions related to Defendants' liability, are also appropriate for certification under Fed. R. Civ. P. 23(c)(4) because the resolution of such common issues would materially advance the resolution of this matter and the parties' interests therein.

104. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(1), in that the prosecution of separate actions by the individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendants. Prosecution of separate actions by Class

Members also would create the risk of adjudications with respect to individual Class Members that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

**COUNT I**
**NEGLIGENCE**
**(On Behalf of Plaintiff and the Class Against Defendants)**

105. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

106. Plaintiff brings this claim on behalf of the Class.

107. As a condition of using the service of Defendants or its partners or affiliates, Plaintiff and the Class were required to provide and entrust Defendants with certain Private Information, including their name, birthdate, address, loan number, Social Security number, and other information.

108. Plaintiff and the Class entrusted their Private Information to Defendants on the premise and with the understanding that Defendants would safeguard their information, use their Private Information for business purposes only, and/or not disclose their Private Information to unauthorized third parties.

109. By undertaking the duty to maintain and secure this data, sharing it and using it for commercial gain, Defendants had a duty of care to use reasonable means to secure and safeguard their systems and networks—and Plaintiff and Class Members' Private Information held within it—to prevent disclosure of the information, and to safeguard the information from cyber theft.

110. Defendants had full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and the Class could and would suffer if the Private Information were wrongfully disclosed or obtained by unauthorized parties.

111. Defendants knew or reasonably should have known that its failure to exercise due care in the collecting, storing, and using of consumers' Private Information involved an

unreasonable risk of harm to Plaintiff and the Class, including harm that foreseeably could occur through the criminal acts of a third party.

112. Defendants had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining, and testing Defendants' security protocols to ensure that Plaintiff and Class Members' information in their possession was adequately secured and protected.

113. Defendants also had a duty to exercise appropriate practices to remove former customers' Private Information that they were no longer required to retain pursuant to regulations.

114. Defendants had a duty to have procedures in place to detect and prevent the improper access and misuse of Plaintiff and the Class's Private Information, and to employ proper procedures to prevent the unauthorized dissemination of the Private Information of Plaintiff and the Class.

115. Defendants' duty to use reasonable security measures arose as a result of the special relationship that existed between Defendant and Plaintiff and the Class. That special relationship arose because Plaintiff and the Class entrusted Defendants with their confidential Private Information, a mandatory step in receiving services from Defendant. While this special relationship exists independent from any contract, it is recognized by Defendants' Privacy Policies, as well as applicable laws and regulations. Specifically, Defendants actively solicited and gathered Private Information as part of their business and was solely responsible for and in the position to ensure that their systems were sufficient to protect against the foreseeable risk of harm to Plaintiff and Class members from a resulting data breach.

116. Defendants were subject to an independent duty, untethered to any contract between Defendants and Plaintiff and the Class, to maintain adequate data security.

117. A breach of security, unauthorized access, and resulting injury to Plaintiff and the Class was reasonably foreseeable, particularly in light of Defendants' inadequate security practices.

118. Defendants also had a common law duty to prevent foreseeable harm to others. Plaintiff and the Class were the foreseeable and probable victims of Defendants' inadequate security practices and procedures. Defendants knew or should have known of the inherent risks in collecting and storing the Private Information of Plaintiff and the Class, the critical importance of adequately safeguarding that Private Information, and the necessity of encrypting Private Information stored on Defendants' systems. It was foreseeable that Plaintiff and Class members would be harmed by the failure to protect their personal information because hackers are known to routinely attempt to steal such information and use it for nefarious purposes.

119. Defendants' conduct created a foreseeable risk of harm to Plaintiff and the Class. Defendants' wrongful conduct included, but was not limited to, their failure to take the steps and opportunities to prevent the Data Breach as set forth herein. Defendants' misconduct also included their decision not to comply with industry standards for the safekeeping of Plaintiff and the Class's Private Information, including basic encryption techniques available to Defendants.

120. Plaintiff and the Class had and have no ability to protect their Private Information that was in, and remains in, Defendants' possession.

121. Defendants were in a position to effectively protect against the harm suffered by Plaintiff and the Class as a result of the Data Breach.

122. Defendant had and continues to have a duty to adequately disclose that the Private Information of Plaintiff and the Class within Defendants' possession was compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiff and the Class to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their Private Information by third parties.

123. Defendants have admitted that the Private Information of Plaintiff and the Class was wrongfully accessed by unauthorized third persons as a result of the Data Breach.

124. Defendants, through their actions and inaction, unlawfully breached their duties to Plaintiff and the Class by failing to implement industry protocols and exercise reasonable care in

protecting and safeguarding the Private Information of Plaintiff and the Class when the Private Information was within Defendants' possession or control.

125. Defendants improperly and inadequately safeguarded the Private Information of Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

126. Defendants failed to heed industry warnings and alerts to provide adequate safeguards to protect its current and former customers' Private Information in the face of increased risk of theft.

127. Defendants, through their actions and/or omissions, unlawfully breached their duty to Plaintiff and the Class by failing to have appropriate procedures in place to detect and prevent dissemination of their current and former customers' Private Information.

128. Defendants, by their actions and/or omissions, unlawfully breached their duty to adequately and timely disclose to Plaintiff and the Class the existence and scope of the Data Breach.

129. But for Defendants' wrongful and negligent breach of duties owed to Plaintiff and the Class, the Private Information of Plaintiff and the Class would not have been compromised.

130. There is a close causal connection between (a) Defendants' failure to implement security measures to protect the Private Information of Plaintiff and the Class and (b) the harm or risk of imminent harm suffered by Plaintiff and the Class. Plaintiff and the Class's Private Information was accessed and exfiltrated as the direct and proximate result of Defendants' failure to exercise reasonable care in safeguarding such Private Information by adopting, implementing, and maintaining appropriate security measures.

131. Additionally, Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice of businesses, such as Defendants, of failing to implement reasonable measures to protect Private Information. The FTC Act and related authorities form part of the basis of Defendants' duty in this regard.

132. Defendants violated Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards, as described in detail herein. Defendants' conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored and the foreseeable consequences of the damages that would result to Plaintiff and the Class.

133. Defendants' violation of Section 5 of the FTC Act constitutes negligence *per se*.

134. Plaintiff and the Class are within the class of persons that the FTC Act was intended to protect.

135. The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

136. As a direct and proximate result of Defendants' negligence and negligence *per se*, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity to control how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information for Plaintiff and Class Members' respective lifetimes; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the present and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and other identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their Private Information, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the current and former customers' Private Information in their continued possession; and (viii) present and future costs in the form of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the compromise of Private

Information as a result of the Data Breach for the remainder of the lives of Plaintiff and the Class Members.

137. As a direct and proximate result of Defendants' negligence and negligence *per se*, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

138. Additionally, as a direct and proximate result of Defendants' negligence and negligence *per se*, Plaintiff and the Class have suffered and will suffer the continued risks of exposure of their Private Information, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the Private Information in their continued possession.

139. As a direct and proximate result of Defendants' negligence and negligence *per se*, Plaintiff and the Class are now at an increased risk of identity theft or fraud.

140. As a direct and proximate result of Defendants' negligence and negligence *per se*, Plaintiff and the Class are entitled to and demand actual, consequential, and nominal damages and injunctive relief to be determined at trial.

## COUNT II
## BREACH OF IMPLIED CONTRACT
## (On Behalf of Plaintiff and the Class Against Defendants)

141. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

142. Plaintiff brings this claim on behalf of the Class.

143. Defendants acquired and maintained the Private Information of Plaintiff and the Class, including names, addresses, dates of birth, social security numbers, insurance details and provider information.

144. At the time Defendants acquired the Private Information of Plaintiff and the Class, there was a meeting of the minds and a mutual understanding that Defendants would safeguard the Private Information and not take unjustified risks when storing the Private Information.

145. Plaintiff and the Class would not have entrusted their Private Information to Defendants had they known that Defendants would not properly secure the Private Information, and not delete the Private Information that Defendants no longer had a reasonable need to maintain.

146. Defendants further implicitly promised to comply with industry standards and to ensure that Plaintiff and the Class Members' Private Information would remain protected.

147. Implicit in the agreements between Plaintiff and the Class and Defendant to provide Private Information, was the latter's obligation to:

a. Use such Private Information for business purposes only;

b. Take reasonable steps to safeguard the Private Information;

c. Prevent unauthorized disclosures of the Private Information;

d. Provide Plaintiff and the Class with prompt and sufficient notice of any and all unauthorized disclosure or uses; and

e. Retain the Private Information only under conditions that kept such information secure and confidential.

148. In collecting and maintaining the Private Information of Plaintiff and the Class and publishing its privacy policies, Defendants entered into implied contracts with Plaintiff and the Class requiring Defendants to protect and keep secure the Private Information of Plaintiff and the Class.

149. Plaintiff and the Class fully performed their obligations as required with Defendants.

150. Defendants breached the implied contract it made with Plaintiff and the Class by failing to protect and keep private the financial information of Plaintiff and the Class, including failing to;

a. Encrypt or tokenize the sensitive Private Information of Plaintiff and the Class;

b. Delete such Private Information that Defendant no longer had reason to maintain;

c. Eliminate the potential accessibility of the Private Information where such accessibility was not justified; and

d. Otherwise review and improve the security of the network system that contained such Private Information.

151. As a direct and proximate result of Defendants' above-described breach of implied contract, Plaintiff and the Class have suffered (and will continue to suffer): ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; additional time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts, credit freezes; decreased credit scores and ratings; lost work time; and other economic and non-economic harm.

152. As a direct and proximate result of Defendants' breach of implied contract, Plaintiff and the Class are at an increased risk of identity theft or fraud.

153. As a direct and proximate result of Defendants' breach of implied contracts, Plaintiff and the Class are entitled to and demand actual, consequential, and nominal damages and injunctive relief, to be determined at trial.

**COUNT III**
**BREACH OF FIDUCIARY DUTY**
**(On Behalf of Plaintiff and the Class Against Defendants)**

154. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

155. Plaintiff brings this claim on behalf of the Class.

156. A relationship existed between Defendants and Plaintiff and the Class in which Plaintiff and the Class put their trust in Defendants to protect the Private Information of Plaintiff and the Class and Defendants accepted that trust.

157. Defendants breached the fiduciary duty that they owed to Plaintiff and the Class by failing to act with the utmost good faith, fairness, and honesty, failing to act with the highest and finest loyalty, and failing to protect the private information of Plaintiff and the Class.

158. Defendants' breach of fiduciary duty was a legal cause of damage to Plaintiff and the Class.

159. But for Defendants' breach of fiduciary duty, the damage to Plaintiff and the Class would not have occurred.

160. Defendants' breach of fiduciary duty contributed substantially to producing the damage to Plaintiff and the Class.

161. As a direct and proximate result of Defendants' breach of fiduciary duty, Plaintiff and the Class are entitled to and demand actual, consequential, and nominal damages and injunctive relief.

**COUNT IV**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Class Against Defendants)**

162. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

163. Defendants required Plaintiff and Class Members to provide their Private Information in order to engage in business.

164. Plaintiff and Class Members conferred a monetary benefit on Defendants by providing their Private Information.

165. Defendants did not secure Plaintiff's and the Class Members' Private Information, and therefore, did not fairly compensate Plaintiff or the Class Members for the value of their Private Information.

166. Had Plaintiff and the Class Members known that Defendants would not adequately protect their Private Information, they would not have agreed to entrust it to Defendants.

167. Under the circumstances, Defendants would be unjustly enriched by being permitted to retain any of the benefits that Plaintiff and the Class conferred onto it.

168. Plaintiff and the Class have sustained injuries as a result of Defendants' conduct, and Plaintiff and the Class are without an adequate remedy.

169. Plaintiff and the Class are entitled to restitution from Defendants and a disgorgement of profits, benefits and other compensation received by Defendants as a result of their wrongful conduct.

**COUNT V**
**DECLARATORY JUDGMENT**
**(On Behalf of Plaintiff and the Class Against Defendants)**

170. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

171. Plaintiff brings this claim on behalf of the Class.

172. The Declaratory Judgment Act, 28 U.S.C. § 2201, *et. seq*., authorizes this Court to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal statutes as applicable here.

173. Defendants owe duties of care to Plaintiff and Class Members, which require Defendants to adequately secure Plaintiff and the Class Member's Private Information.

174. Due to the Data Breach, Plaintiff and the Class Member's Private Information have been unnecessarily put at risk.

175. An actual controversy has arisen in the wake of the Data Breach regarding Defendants' present and prospective common law and other duties to reasonably safeguard Plaintiff and the Class Members' Private Information and whether Defendants are currently

maintaining data security measures adequate to protect Plaintiff and the Class from further data breaches that compromise their Private Information.

176. Accordingly, Plaintiff and the Class request this Court under the Declaratory Judgment Act to enter a judgment declaring the following:

a. Defendants owe a legal duty to secure the Private Information of their former and current customers of Defendant;

b. Defendants have breached its duty to Plaintiff and the Class by allowing the Data Breach to occur;

c. Defendants continue to breach its legal duty by failing to employ reasonable means to secure the Private Information of Defendants' former and current customers.

d. Defendants' ongoing breaches of said duty continue to cause Plaintiff and the Class harm.

177. Plaintiff and the Class, therefore, seek a declaration that (1) Defendants' existing security measures do not comply with their obligations and duties of care to provide reasonable security procedures and practices appropriate to the nature of the information to protect consumers' Private Information, and (2) to comply with their duties of care, Defendants must implement and maintain reasonable security measures, including, but not limited to:

a. Engaging third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants' systems on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors;

b. Engaging third-party security auditors and internal personnel to run automated security monitoring;

c. Auditing, testing, and training their security personnel regarding any new or modified procedures;

d. Segmenting user applications by, among other things, creating firewalls and access controls so that if one area is compromised, hackers cannot gain access to other portions of Defendants' systems;

e. Conducting regular database scanning and security checks;

f. Routinely and continually conducting internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

g. Purchasing credit monitoring services for Plaintiff and Class Members for their respective lifetimes; and

h. Meaningfully educating Plaintiff and Class Members about the threats they face as a result of the loss of their Private Information to third parties, as well as the steps they must take to protect themselves.

178. The Court should issue corresponding prospective injunctive relief requiring Defendants to employ adequate security protocols consistent with the law and industry standards to protect Plaintiff and Class Members' Private Information.

179. If an injunction is not issued, Plaintiff and the Class will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach of Defendants' systems or networks. The risk of another breach is real, immediate, and substantial.

180. The hardship to Plaintiff and the Class if an injunction does not issue exceeds the hardship to Defendants if an injunction is issued. If another data breach occurs, Plaintiff and the Class will likely be subjected to fraud, identity theft, and other harms described herein. But, the cost to Defendant of complying with an injunction by employing reasonable prospective data security measures is minimal given it has pre-existing legal obligations to employ these measures.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of  and all Class Members, requests judgment against Defendants and that the Court grant the following:

a. An Order certifying the Class, as defined herein, and appointing Plaintiff and their counsel to represent the Class;

b. Equitable relief enjoining Defendants from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff and the Class Members' Private Information, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiff and the Class Members;

c. Injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an order:

   i. Prohibiting Defendants from engaging in the wrongful and unlawful acts described herein;

   ii. Requiring Defendants to protect, including through encryption, all data collected through the course of their business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

   iii. Requiring Defendants to provide out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information for Plaintiff and Class Members' respective lifetimes;

   iv. Requiring Defendants to delete, destroy, and purge the Private Information of Plaintiff and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

v. Requiring Defendants to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the Private Information of Plaintiff and Class Members;

vi. Prohibiting Defendants from maintaining Plaintiff and Class Members personally identifying information on a cloud-based database;

vii. Requiring Defendants to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants systems on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by third-party security auditors;

viii. Requiring Defendants to engage independent third-party security auditors and internal personnel to run automated security monitoring;

ix. Requiring Defendants to audit, test, and train their security personnel regarding any new or modified procedures;

x. Requiring Defendants to segment data by, among other things, creating firewalls and access controls so that if one area of Defendants' network is compromised, hackers cannot gain access to other areas of Defendants' systems;

xi. Requiring Defendants to conduct regular database scanning and securing checks;

xii. Requiring Defendants to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personally identifying information, as well as protecting the personally identifying information of Plaintiff and Class Members;

xiii. Requiring Defendants to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xiv. Requiring Defendants to implement a system of tests to assess their respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendants' policies, programs, and systems for protecting personally identifying information;

xv. Requiring Defendants to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendants' information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xvi. Requiring Defendants to adequately educate all Class Members about the threats that they face as a result of the loss of their confidential Private Information to third parties, as well as the steps affected individuals must take to protect themselves;

xvii. Requiring Defendants to implement logging and monitoring programs sufficient to track traffic to and from Defendants' servers; and, for a period of 10 years, appointing a qualified and independent third party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendants' compliance with the terms of the Court's final judgment, to provide such report to the Court and to Class Counsel, and to report any material deficiencies or noncompliance with the Court's final judgment;

d. For an award of damages, including actual, statutory, consequential, punitive, and nominal damages, as allowed by law in an amount to be determined;

e. For an award of reasonable attorneys' fees, costs, and litigation expenses, as allowed by law;

f. For prejudgment interest on all amounts awarded; and

g. Such other and further relief as this Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: April 13, 2026

**BARRACK, RODOS & BACINE**

*/s/ Andrew J. Heo*
Andrew J. Heo (NJ Bar # 326289)
Jeffrey W. Golan*
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Tel: 215-963-0600
aheo@barrack.com
jgolan@barrack.com

*Attorneys for Plaintiff and the Proposed Class*

**pro hac vice application forthcoming*